**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**KHALID LORD,**

**Plaintiff,**

**v.** **1:23-CV-165 (FJS/PJE)**

**SEAN TASHJIAN; JOHN DOE,** ***Law Enforcement Officials Who Procured and/or Executed the Search Warrants ##1-8*****; JOHN DOE,** ***Hudson Police Department Supervisors ##1-4*****; JOHN DOE,** ***Hudson Police Officers ##1-10*****; JOHN DOE,** ***New York State Police ##1-10*****; and JOHN DOE,** ***Other Law Enforcement Officials ##1-10*****,**

**Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **CHARNY & WHEELER P.C.**<br>42 West Market Street<br>Rhinebeck, New York 12572<br>Attorneys for Plaintiff | **H. JOSEPH CRONEN, ESQ.**<br>**NATHANIEL K. CHARNY, ESQ.** |
| **BERGSTEIN & ULLRICH, LLP**<br>5 Paradies Lane<br>New Paltz, New York 12561<br>Attorneys for Plaintiff | **STEPHEN BERGSTEIN, ESQ.** |
| **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL – SYRACUSE REGIONAL OFFICE**<br>300 South State Street, Suite 300<br>Syracuse, New York 13202<br>Attorneys for Defendant Tashjian | **AIMEE COWAN, AAG** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**[1]

**I. INTRODUCTION**

On February 7, 2023, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Sean Tashjian and others violated his rights under the First and Fourth Amendments to the United States Constitution. *See generally* Dkt. No. 1, Complaint. Plaintiff filed an Amended Complaint on April 27, 2023. *See generally* Dkt. No. 14.

Currently pending before the Court is Defendant Sean Tashjian's motion for summary judgment. *See generally* Dkt. No. 56, Defendant's Notice of Motion. Plaintiff opposes the motion. *See generally* Dkt. No. 61, Plaintiff's Memorandum of Law.

**II. PRELIMINARY MATTERS**

**A. John Doe Defendants**

As an initial matter, the Court *sua sponte* dismisses the Amended Complaint as to the unidentified John Doe Defendants. *See* Dkt. No. 14, Amended Complaint.

Discovery is now complete, *see* Dkt. No. 56-2, Declaration of Aimee Cowan, at ¶ 5, and Plaintiff has failed to identify the John Doe Defendants or otherwise indicate that he has made efforts to discover the John Doe Defendants' identities. *See Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (stating that, "'[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any efforts to discover the [defendant's] name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant'" (quotation omitted)); *see also Kaczmarek v. City of Schenectady*, No. 10-

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which can be found in the upper right corner of those pages.

cv-1193 (GLS/CFH), 2013 WL 5506276, at *2 (N.D.N.Y. Oct. 4, 2013) (stating that "[b]ecause plaintiffs have failed to timely identify and serve the John Doe defendants, plaintiffs' claims against both John Doe defendants are dismissed"). Accordingly, the Court dismisses Plaintiff's claims against the John Doe Defendants. *See Disla v. City of N.Y.*, No. 22-cv-6730 (HG), 2025 U.S. Dist. LEXIS 100012, at *8-9 (E.D.N.Y. May 27, 2025) (*sua sponte* dismissing the plaintiff's complaint "as to the unidentified Doe Defendants" because "[p]laintiff . . . had ample opportunity throughout the course of discovery to identify the Doe Defendants yet . . . failed to do so"); *Jackson v. West*, No. 9:23-CV-0306 (LEK/PJE), 2025 U.S. Dist. LEXIS 30429, at *41 (N.D.N.Y. Feb. 20, 2025) (recommending *sua sponte* dismissal of the John Doe defendants because "'[a]ll discovery is complete'" and the "[p]laintiff has had a substantial amount of time to identify and serve the Doe defendants" but did not do so) (*report and recommendation adopted by* 2025 U.S. Dist. LEXIS 46628 (N.D.N.Y. Mar. 14, 2025)).

**B. Plaintiff's withdrawn claims**

In response to Defendant's motion for summary judgment, "Plaintiff withdr[ew] all causes of action aside from his § 1983 claim for First Amendment retaliation." *See* Dkt. No. 61, Plaintiff's Memorandum of Law, at 5. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's Fourth Amendment false arrest, false imprisonment, deprivation of property, malicious prosecution, deprivation of the right to a fair trial, and deprivation of the right to a speedy trial claims. *See generally* Dkt. No. 56-1, Defendant's Memorandum of Law. As a result, Plaintiff's only remaining claim is his First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Defendant Sean Tashjian.

## III. RELEVANT FACTUAL BACKGROUND[2]

This action stems from events that followed a joint investigation by the New York State Police Special Investigation Unit ("NYSP") and the Hudson City Police Department into a criminal gang operating in the City of Hudson known as the "Men of Business" (the "MOB Investigation"). *See* Dkt. No. 56-34, Defendant's Statement of Material Facts Not in Dispute ("SMF"), at ¶ 4. At the time of the events alleged in Plaintiff's Amended Complaint, Defendant was employed by the NYSP as an investigator for the Troop K Violent Gangs and Narcotics Team and worked on the MOB investigation. *See id.* at ¶¶ 1-2, 4.

The MOB Investigation commenced in the Spring of 2021 and included the surveillance of gang members' social media communications, including Facebook Messenger, physical surveillance of gang members' activities, and instances where undercover officers conducted "controlled buys."[3] *See id.* at ¶¶ 4-6. In June 2021, in furtherance of the MOB Investigation, members of the NYSP applied for, and New York State Supreme Court Justice John Egan issued orders "authorizing the installation and use of Pen Register, Tap and Trace, and Eavesdropping Warrants. *See id.* at ¶ 9. Among these warrants were (i) an eavesdropping "warrant for the interception and recording of telephone and electronic communications for [P]laintiff's telephone number," *see id.* at ¶ 13, and (ii) a search warrant for Plaintiff's residence and vehicle. *See id.* at ¶¶ 18-20.

[2] Unless otherwise noted, the following facts are taken from Defendant's Statement of Material Facts ("SMF") and are undisputed.

[3] A "controlled buy" is "when, under the direction and supervision of law enforcement, an individual purchases a controlled substance from a suspected criminal." *See* Defendant's SMF at ¶ 7.

Based on evidence obtained during the MOB Investigation, law enforcement believed Anthony Price Baynes ("APB")[4] and Plaintiff were in possession of controlled substances and illegal firearms. *See id.* at ¶ 23. Consequently, law enforcement conducted surveillance of Plaintiff and APB. *See e.g., id.* at ¶¶ 27-34, 37-39, 46, 57-58, 61-63.

In furtherance of the MOB Investigation, on July 16, 2021, law enforcement officers conducted a controlled buy. *See id*. at ¶¶ 42, 44, 82-85. The events that occurred on July 16, 2021, are summarized as follows. An undercover NYSP officer identified as "UC 2655" contacted APB and asked to purchase heroin/fentanyl and crack cocaine. *See id.* at ¶¶ 44-45. According to intercepted communications, at approximately 3:19 p.m., APB contacted Plaintiff. *See id.* at ¶ 46. APB then advised UC 2655 to pick him up. *See id.* at ¶ 47. Thereafter, at approximately 3:29 p.m., UC 2655 picked APB up in an undercover vehicle. *See id.* at ¶ 48. APB advised UC 2655 that he needed to go to 226 State Street in the City of Hudson to obtain the crack cocaine. *See id.* at ¶ 51. At approximately 3:35 p.m. UC 2655 was observed arriving at 226 State Street with APB. *See id*. at ¶ 52. A short time later, APB returned and advised UC 2655 that he had to go see his "son" by the Terrance Apartments*.* *See id.* at ¶ 54.

UC 2655 drove to the Terrance Apartment and, at approximately 3:44 p.m., Plaintiff was observed arriving at the Terrance Apartments. *See id.* at ¶¶ 55, 57. Plaintiff engaged in a short conversation with APB, *see id.* at ¶ 58, and after the conversation, APB returned to UCC 2655's vehicle and relayed to UC 2655 that Plaintiff was not comfortable with UC 2655 being so close to the purchase.[5] *See id.* at ¶ 59. APB then advised UC 2655 to drive down the street and pick

---

[4] APB was "known by law enforcement as an MOB gang member involved in the sale of narcotics." *See* Defendant's SMF at ¶ 11.

[5] Plaintiff disputes this fact and alleges that he testified that he never sold drugs. *See* Plaintiff's Response to Defendant's SMF at ¶ 59.

him up when he called. *See id.* at ¶ 59. UC 2655 drove away from the area, *see id.* at ¶ 60, and NYSP continued surveillance. *See id.* at ¶ 61. During this surveillance, NYSP observed Plaintiff and APB enter Plaintiff's vehicle, exit a few minutes later, and then meet at the trunk of the vehicle and exchange money. *See id.* at ¶ 63.

Thereafter, at approximately 4:05 p.m., APB texted UC 2655 "Ready." *See id.* at ¶ 70. A few minutes later, UC 2655 picked up APB. *See id.* at ¶ 73. APB then gave UC 2655 a clear plastic bag containing an off-white chucky substance, which was sold as cocaine to UC 2655 for $200.00. *See id.* at ¶ 74. UC 2655 secured the off-white chunky substance as evidence, *see id.* at ¶ 77, which was tested by the Albany Forensic Investigation Center on July 30, 2021 and determined to be cocaine. *See id*. at ¶ 78.

Defendant then presented the evidence he obtained against Plaintiff to District Attorney Czajka and Assistant District Attorney Carty. *See id.* at ¶ 79. At the conclusion of that meeting, the District Attorney's Office informed Defendant that there was probable cause to arrest Plaintiff.[6] *See id.* at ¶ 80.

On August 6, 2021, Defendant signed a felony complaint, which alleged that Plaintiff sold crack cocaine to APB in the presence of an undercover member of the NYSP. *See id.* at ¶¶ 82-83. That same day, Plaintiff was arrested, arraigned, and then released on his own recognizance. *See id.* at ¶¶ 85, 93.

A few weeks after Plaintiff's arrest, on August 24, 2021, Defendant "was advised that a social media post had been made to a Facebook account that NYSP had previously determined was maintained by [P]laintiff under the pseudonym 'Lay Lo'" (the "Facebook Post"). *See id.* at

[6] Plaintiff disputes this fact and alleges that "[l]aw enforcement only requested a search warrant at that time." *See* Plaintiff's Response to Defendant's SMF at ¶ 80.

¶ 95. The Facebook Post contained a photograph of Defendant with his wife and children and was accompanied with the following caption: "Sean C. Tashjian this is the famous undercover who sending all of us friend request this this the guy who intimidates black guys he thinks he's funny but he really a racist . . . Lol you ain't low Scott trees."[7] *See id.* at ¶ 98.

Upon becoming aware that the Facebook Post had been made to the "Lay Lo" account, Defendant called and texted Plaintiff requesting that he "take down the photos of his family."[8] *See id.* at ¶ 102. Defendant told Plaintiff that he could post about him but needed to take down the photographs of his wife and children. *See id.* at ¶ 103. Following Defendant's correspondences with Plaintiff, the Facebook Post was modified to include only a photograph of Defendant—the pictures of Defendant's wife and children were removed. *See id.* at ¶ 104.

Defendant was required to notify his supervisor that the Facebook Post was made to the "Lay Lo" account and that Defendant contacted Plaintiff instructing removal of the Facebook Post. *See id.* at ¶ 108.[9] Due to Plaintiff's social media posts regarding Defendant's family, Defendant was no longer assigned to Plaintiff's case. *See id.* at ¶ 126.

Following the Facebook Post, District Attorney ("DA") Czajka submitted to the city court a request for an Order to Show Cause, which was accompanied with an affirmation that

---

[7] "Scott Trees" is the name of an undercover Snapchat account that Defendant maintained to assist the Hudson Police Department in a homicide investigation. *See* Defendant's SMF at ¶ 99.

[8] Plaintiff disputes this fact "to the extent Defendant claims to have asked the Plaintiff to take down the photographs." *See* Plaintiff's Response to Defendant's SMF, Dkt. No. 62, at ¶ 102 (citing Defendant's Deposition at 49:7-9). At Defendant's deposition, when asked "Did you tell Khalid Lord, 'Get my fucking picture off of Facebook?'" Defendant answered "Yes. I probably did." *See* Dkt. No. 56-4, Tashjian Deposition, at 49:7-9.

[9] Plaintiff disputes this fact and asserts it "states a legal conclusion . . . without any evidence or citation to any authority." *See* Plaintiff's Response to Defendant's SMF at ¶ 108.

requested "an Order immediately revoking the defendant's bail status and remanding the defendant to the Columbia County Jail pending further proceeding" (the "Application to Revoke Bail of Khalid Lord"). *See* Dkt. No. 56-16, Order to Show Cause and Affirmation in Support of Order to Show Cause; *see also* Defendant's SMF at ¶ 110. DA Czajka's affirmation in support of the Application to Revoke Bail attached the Facebook Post, and argued that the Facebook Post constituted a threat and was sufficient to revoke Plaintiff's recognizance bail.[10] *See* Defendant's SMF at ¶ 111; *see also* Affirmation in Support of Order to Show Cause at ¶¶ 6, 8. Hudson City Court Judge John Connor granted DA Czajka's Application to Revoke Bail, ordered Plaintiff be remanded to the Columbia County jail for further proceedings, and scheduled a bail hearing for August 31, 2021.[11] *See* Defendant's SMF at ¶ 112.

Defendant asserts that he played no role in the revocation of Plaintiff's bail and did not make any recommendation or direction to the District Attorney's Office, the NYSP, or the US Marshal to detain Plaintiff—instead, that decision was made by the District Attorney's Office.[12] *See id.* at ¶¶ 114-115. Additionally, on the day of Plaintiff's arrest after his bail was revoked, August 24, 2021, Defendant was not present. *See id.* at ¶ 116. Nor did Defendant initiate or pursue charges against Plaintiff for the Facebook Post. *See id.* at ¶¶ 116-17.

---

[10] Plaintiff disputes this fact and asserts that the "Affirmation does not assert that the post constitutes a threat" and "[t]he affirmation never applies law to facts." *See* Plaintiff's Response to Defendant's SMF at ¶ 111.

[11] Judge Connor found that the Facebook Post constituted "witness intimidation," given that the post contained "the name of an undercover informant with his pictures." *See* Dkt. No. 65-2, Hearing Transcript, at 29.

[12] Plaintiff disputes that Defendant played no role in the revocation of Plaintiff’s bail and asserts that "ample circumstantial evidence points to the contrary." *See* Plaintiff's Response to Defendant's SMF at ¶¶ 114-115.

After Plaintiff's bail was revoked, he filed an application for a writ of habeas corpus, *see id.* at ¶ 118*,* which Supreme Court Justice Henry Zwack granted on the grounds that the hearing court erred when it failed to exclude the Facebook Post at the bail hearing because the District Attorney's Office did not properly authenticate the Facebook Post or lay an adequate foundation for its admissibility. *See id.* at ¶¶ 118-119. Accordingly, on September 9, 2021, Justice Zwack granted Plaintiff's writ and Plaintiff was immediately released from custody. *See* Dkt. No. 56-17, Judge Zwack's Order, at 3.

Ultimately, the August 6, 2021 felony complaint which Defendant signed, and in which he alleged that Plaintiff sold crack cocaine, was dismissed on the grounds the District Attorney's Office failed to timely present the case to a grand jury. *See* Defendant's SMF at ¶¶ 122, 124; *see also* Dkt. No 56-18, Order Terminating Plaintiff's Prosecution, at 5.

Plaintiff then brought this instant action pursuant to § 1983 alleging violations of his First and Fourth Amendment rights. *See* Dkt. No. 1, Complaint.

## IV. DISCUSSION

### A. Standard of review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute as to a material fact to be decided with respect to any essential element of the claim at issue. *See id.* at 250. Once the moving party meets its initial burden, the opposing party must show that there is a material issue of fact for trial. *See id.*

Finally, when deciding a motion for summary judgment, a court must resolve any ambiguities and draw all reasonable inferences from the facts in a light most favorable to the non-moving party. *See Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). Summary judgment is proper "only where no reasonable trier of fact could find for the non-moving party." *Bldg. Trades Emp'rs Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted).

**B. First Amendment retaliation claim brought pursuant to § 1983**

Plaintiff argues that Defendant retaliated against him for exercising his First Amendment right to free speech. *See generally* Dkt. No. 14, Amended Complaint; *see also* Dkt. No. 61, Plaintiff's Memorandum of Law.

"'[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.'" *Winnie v. Sinagra*, No. 1:24-cv-00940 (FKS/PJE), 2025 WL 2391723, *3 (N.D.N.Y. Aug. 18, 2025) (quoting *Vaher v. Town of Orangetown, N.Y.*, 133 F. Supp. 3d 574, 596 (S.D.N.Y. 2015) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)))

"To state a First Amendment retaliation claim sufficient to withstand a motion for summary judgment, the plaintiff must set forth evidence demonstrating "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"

*Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). Moreover, because Plaintiff brings his First Amendment claim pursuant to § 1983, he must set forth evidence that Defendant was personally involved in the alleged constitutional deprivation. *See e.g.*, *Raspardo v. Carlone*, 770 F.3d 97, 115-16 (2d Cir. 2014).

***1. Was Plaintiff's speech constitutionally protected***

It is well-established that there is a First Amendment interest in posting on social media. *See Lawrence v. Zack*, No. 24-CV-1142 (VDO), 2024 U.S. Dist. LEXIS 161377, at *10 (D. Conn. Sep. 9, 2024) (finding that the "[p]laintiff's social media posts constitute[d] protected speech" and noting that "[t]he Supreme Court has recognized a First Amendment interest in posting on social media").

Here, although Defendant acknowledges that there is a First Amendment interest in posting on social media, Defendant generally asserts that Plaintiff's speech is not protected because (i) Plaintiff alleges he did not make the "Lay Lo" Facebook Post, and if he did not make the post in question, there can be no violation of his constitutional rights; and (ii) the Facebook Post, even if made by Plaintiff, constitutes a "true threat" and therefore is not entitled to First Amendment protection. *See generally* Dkt. No. 65, Defendant's Reply Memorandum of Law; *see also* Dkt. No. 56-1, Defendant's Memorandum of Law, at 34-37.

Although the Court acknowledges that Plaintiff made contrary assertions at his deposition regarding whether he made a Facebook post concerning Defendant and his family,[13] "it is

---

[13] Initially, when asked about the Facebook Post at his deposition, Plaintiff denied that he maintained a Facebook account under the nickname "Lay Lo," and denied making the Facebook post at all. *See* Defendant's SMF at ¶ 105. Upon further questioning, Plaintiff admitted that he posted photos of Defendant and his family on Facebook, but he asserted that he posted them on his own Facebook account under his own name, not the "Lay Lo" account. *See id.* at ¶ 106.

undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment" (citations omitted)).

Next, the Court turns to whether the Facebook Post constitutes a true threat and therefore is not entitled to protection under the First Amendment. "Speech amounts to a 'true threat' when 'an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury.'" *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) (quoting *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013) (internal quotation marks and citations omitted)) (other citation omitted. It is well established law that a "true threat" is not afforded protection under the First Amendment. *See United States v. Hunt*, 573 F. Supp. 3d 779, 792 (E.D.N.Y. 2021) (noting that "the Supreme Court has held that the First Amendment does not afford protection to speech that constitutes a 'true threat'").

"'In general, whether [speech] constitutes a threat is an issue of fact for the trial jury.'" *Id.* at 793 (quoting [*United States v. Turner*, 720 F.3d 411,] 419 [(2d Cir. 2013)]); *see also United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982) (noting that "[m]ost cases [involving alleged threats] are within a broad expanse of varying fact patterns which may not be resolved as a matter of law, but should be left to a jury"); *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994) (stating that "'[w]hether [the] words used are a true threat is generally best left to the triers of fact'" (quotations omitted)).

---

Although the record contains screenshots of the Facebook Post under the name "Lay Lo," *see* Dkt. No. 56-35, the record is devoid of any Facebook Post under Plaintiff's name, Khalid Lord.

Here, the speech at issue consists of a Facebook post that included photographs of Defendant with his wife and children and was captioned: "Sean C. Tashjian this is the famous undercover who sending all of us friend request this this the guy who intimidates black guys he thinks he's funny but he really a racist . . . Lol you ain't low Scott trees." *See* Dkt. No. 56-34, Defendant's SMF, at ¶ 98; *see also* Dkt. No. 56-35, Screenshot of Facebook Post.

Given the context of this case—that a few weeks prior to the Facebook post, Defendant conducted an investigation of Plaintiff, issued a felony complaint accusing Plaintiff of selling crack cocaine, and Plaintiff was arrested as a result of said felony complaint— a jury could reasonably find that Plaintiff's Facebook Post constituted a true threat against Defendant. *See United States v. Dennis*, 132 F.4th 214, 229-230 (2d Cir. 2025) (noting that "a seemingly ambiguous communication is properly considered in context to determine whether it implicitly conveyed a true threat").

In light of the above, the Court finds that whether the speech at issue is constitutionally protected is a question of fact that a jury must resolve. However, as discussed in detail below, summary judgment is nevertheless warranted.

***2. Adverse-action prong***

The second prong of a First Amendment retaliation claim is that the plaintiff must establish that he suffered an adverse action at the hands of the defendant. *See e.g., Arias v. United States Immigr. & Customs Enf't*, No. 26-cv-2130 (CM), 2026 U.S. Dist. LEXIS 137700, at *103 (S.D.N.Y. June 22, 2026) (stating that "'a First Amendment retaliation claim requires allegations that . . . the **defendant** took adverse action against the plaintiff . . .'") (quotation omitted) (emphasis added)

The Second Circuit has held that, in the context of a First Amendment retaliation claim, "'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quotation and other citation omitted). "Whether a particular action is considered adverse depends on the circumstances." *Lopez v. Capega*, No. 3:24-CV-00225 (SVN), 2024 U.S. Dist. LEXIS 96937, at *18 (D. Conn. May 31, 2024) (citation omitted).

Here, Plaintiff alleges he suffered adverse action because (i) Defendant ordered Plaintiff to "change his protected speech and coerced him to do so," and (ii) Defendant "contacted his supervisor leading to Plaintiff's subsequent arrest and reincarceration." *See* Dkt. No. 61, Plaintiff's Memorandum of Law, at 9-10.

The Court is unpersuaded by Plaintiff's argument that "[a] reasonable jury could infer from these facts that Plaintiff was rearrested at Defendant Tashjian's behest." *See* Dkt. No. 61, Plaintiff's Memorandum of Law, at 14. Even assuming that Defendant "coerced" Plaintiff into changing his speech, and the action that followed—the DA filing a motion for an Order to Show Cause to revoke Plaintiff's bail, which, in turn, led to Plaintiff's bail being revoked, and Plaintiff being re-arrested and reincarcerated—is considered adverse, because the District Attorney's Office, [14] not Defendant, took this action, Plaintiff has failed to satisfy the second prong of a First Amendment retaliation claim, *i.e.*, that Defendant took an adverse action against him. Consequently, Plaintiff's First Amendment retaliation claim fails as a matter of law. In other words, Plaintiff has failed to produce any evidence from which a reasonable jury could conclude that Defendant was **personally responsible** for Plaintiff's rearrest and reincarceration.

[14] *See* Dkt. No 56-16, District Attorney Paul Czajka's Affirmation in Support of Order to Show Cause to Revoke Bail.

Simply put, Defendant cannot be held liable for the actions of the DA. *See e.g.*, *Dominguez v. Beame*, 603 F.2d 337, 342 (2d Cir. 1979) (holding that a police department cannot be held liable for the decisions of the district attorney's office because the police department is a "separate unit of the city's governmental structure"); *see also Miller v. Cty. of Nassau*, 467 F. Supp. 2d 308, 316 (E.D.N.Y. 2006) (holding that the County cannot be held liable for prosecutorial decisions).

Moreover, to sustain a §1983 claim, Plaintiff is required to set forth facts demonstrating that Defendant, personally, violated his constitutional rights, which he has failed to do. *See e.g., In re Malave-Sykes,* No. 3:23-CV-1215 (AJB/ML), 2026 U.S. Dist. LEXIS 183969, at *21-22 (N.D.N.Y. Aug. 17, 2026) (holding that police officer defendant was "entitled to summary judgment on plaintiff's § 1983 First Amendment retaliation claim" because the plaintiff's "§ 1983 claim is not premised on any conduct attributable to the [o]fficer"); *see also Spavone v. N.Y. State Dep't of Corr. Servs*., 719 F.3d 127, 135 (2d Cir. 2013) (stating that "'[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'" (quotation omitted)).

"The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Nardoni v. City of N.Y.*, 331 F. Supp. 3d 116, 122-23 (S.D.N.Y. 2018) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

As set forth above, it was the DA who made an Application to Revoke Plaintiff's Bail, not Defendant. Additionally, Plaintiff does not dispute that (i) after his bail was revoked, Defendant was not present for his re-arrest, *see* Plaintiff's Response to Defendants SMF at ¶ 116; (ii)

Defendant did not initiate or pursue charges against Plaintiff for the Facebook Post, s*ee id.* at ¶¶ 116-117; (iii) it was DA Czajka, not Defendant, who submitted an affirmation in support of the motion for the Order to Show Cause, requesting an Order immediately revoking Plaintiff's bail status, *see id.* at ¶ 110; and (iv) after the Facebook Post, Defendant was no longer assigned to Plaintiff's case, s*ee id.* at ¶ 126. Accordingly, the Court concludes that there is no evidence from which a reasonable jury could conclude that Defendant was directly involved in Plaintiff's alleged constitutional deprivation.

Although Plaintiff acknowledges that "personal involvement may be a prerequisite to an award of damages under § 1983," *see* Dkt. No. 61, Plaintiff's Memorandum of Law, at 12, Plaintiff argues that there is "strong circumstantial evidence from which a reasonable jury could conclude that Defendant was involved in the second arrest and/or confinement." *See id.* at 13; *see also* Plaintiff's Response to Defendant's SMF at ¶ 114 (Plaintiff disputing the fact that Defendant "played no role in seeking to revoke Plaintiff's bail" and asserting that "[a]mple circumstantial evidence points to the contrary").

However, Plaintiff fails to present any evidence, circumstantial or otherwise, that Defendant indirectly participated in the District Attorney's decision to submit an Application to Revoke Bail—such as ordering or directing the DA to revoke Plaintiff's bail—and "circumstantial evidence of retaliation, . . ., without more, is insufficient to survive summary judgment." *Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) (citing, *e.g., Ayers v. Stewart*, 101 F.3d 687, No. 96-2013, 1996 WL 346049, at *1 (2d Cir. 1999) (Plaintiff's "reliance on circumstantial evidence of retaliation -- namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him -- does not suffice to defeat summary judgment")).Thus, the Court concludes that Plaintiff's conclusory and

speculative allegations are insufficient to defeat summary judgment. *See e.g., Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (finding that "[c]onclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact" (citation omitted)).

In light of the above, the Court finds that Plaintiff has failed produce any evidence from which a jury could conclude that he suffered an adverse action at the hands of Defendant. Consequently, Plaintiff's First Amendment retaliation claim against Defendant fails as a matter of law.

***3. Causal-Connection Prong***

The last prong of a First Amendment retaliation claim requires Plaintiff to show that there was a causal connection between the protected speech and Defendant's adverse action. *See Connolly*, 794 F.3d at 294 (explaining that "[t]o state a First Amendment retaliation claim . . . a plaintiff must allege . . . that there was a causal connection between the protected speech and the adverse action"); *see, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019) (noting that to prevail on a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant’s 'retaliatory animus' and the plaintiff’s 'subsequent injury' . . . It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. . . it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive") (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

Here, because the Court finds that Plaintiff has failed to establish that he suffered an adverse action at the hands of Defendant, *see supra*, it necessarily follows that Plaintiff also fails to satisfy the causal connection requirement of a First Amendment retaliation claim.[15]

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's claims against the John Doe Defendants are **DISMISSED** based on Plaintiff's failure to identify and serve those Defendants; and the Court further

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No.56, is **GRANTED** and Plaintiff's Amended Compliant, Dkt. No.14, is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter **JUDGMENT** in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 28, 2026
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

[15] The parties dispute whether Defendant is entitled to qualified immunity. *See e.g.*, Defendant's Memorandum of Law at 37; *see also* Defendant's Reply Memorandum of Law at 15-18; Plaintiff's Memorandum of Law at 15-18. However, "because the Court finds that the Plaintiff[] [has] not articulated any constitutional violation, the question of the propriety of the Defendant['s] qualified immunity defense is moot." *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005). "Without an underlying constitutional violation, qualified immunity cannot attach." *Id.* (citation omitted).